## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

**LOVELLE TURNER**  PLAINTIFF

v.  CIVIL ACTION NO. 5:24-CV-P183-JHM

**OFFICER HORN et al.**  DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Plaintiff Lovelle Turner, a prisoner at the Kentucky State Penitentiary (KSP) proceeding *pro se*, initiated this 42 U.S.C. § 1983 action. The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). On review of the complaint and four additional filings from Plaintiff, this action will be dismissed.

### I. STATEMENT OF CLAIMS

Plaintiff, who states that she is transgender woman, sues KSP employees Officers Horn, Syias Bennet, and Cassandra Johnson; Ms. Wilke, a KSP therapist; Internal Affairs (IA) Officer Laure;[1] and Warden Laura Plappert in their individual and official capacities.

Plaintiff states that after she threw "piss" on Defendant Johnson, Defendant Johnson had her stripped out to nothing but paper boxers and took her mattress and "security blanket" for four days.

Plaintiff further alleges that Defendants Johnson, Horn, and Bennet "would go around telling other inmates that I was filing PREAs on [officers] and trying to turn inmates against me."[2] She asserts that Defendant Laure did not take her PREA complaints seriously and has stated that

---

[1] At certain points in the complaint, Plaintiff refers to this Defendant as "Larue." The Court will use "Laure" since Plaintiff used this spelling in the caption of the complaint.
[2] PREA refers to the Prison Rape Elimination Act.

Plaintiff is a security risk and that she is "staying at KSP," which Plaintiff considers to be a threat to her safety. She also states that she put in a request to begin hormone treatment on November 6, 2024, and Defendant Wilke had "attitude" with her and that she did not been receive copies of the mental health sick calls that she put in. Plaintiff further states, "She asked me why I wrote the other mental health lady. I told her it was confidential. She tried to turn it around and say I was pro suing and the letter was turned into IA."

Plaintiff also alleges that she wrote Defendant Plappert about her problems, but Defendant Plappert "failed to fix the problem."

Plaintiff requests compensatory and punitive damages and transfer to another facility.[3]

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include

---

[3] Plaintiff attaches more than 50 pages of documents. Some are titled "Notes," some appear to be diary entries of events on certain days, and some may be copies of letters. The Court is not obligated to search through the voluminous exhibits in order to glean a clear and succinct statement of each claim for relief that Plaintiff may intend to assert, and the Court has not done so. "It is Plaintiff's responsibility to formulate her legal claims and to provide factual allegations to support those claims." *Ali-Bey v. Gall*, No. 1:14 CV 1168, 2014 WL 12599826, at *3 (N.D. Ohio Aug. 29, 2014).

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Nor is this Court required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) (per curiam). To do so would require the "courts to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### A. Official-capacity claims

"[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). A state, its agencies, and state officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, the official-capacity claims against Defendants will be dismissed for failure to state a claim.

### B. Individual-capacity claims

#### *1. Eighth Amendment*

Plaintiff alleges that Defendant Johnson had her stripped to only paper boxers and took her mattress and "security blanket" while in a "freezing" cold cell for four days.

The Eighth Amendment protects inmates from "cruel and unusual punishments." An Eighth Amendment claim includes both an objective and a subjective component. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component requires the plaintiff to demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In the context of conditions of confinement, the Eighth Amendment's prohibition against cruel and unusual punishments requires prison officials to "provide humane conditions of confinement." *Id*. at 832. However, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (internal citation omitted) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

The Court finds that Plaintiff's claim that she spent four days with nothing but paper boxers to wear in a cold cell with no mattress or blanket does not state an Eighth Amendment claim. *See Grissom v. Davis*, 55 F. App'x 756, 757-58 (6th Cir. 2003) (holding that 7-day period without mattress, blanket, or sheets did not deprive inmate of basic human needs or cause her to suffer serious harm); *Wells v. Jefferson Cnty. Sheriff Dep't*, 35 F. App'x 142, 143 (6th Cir. 2002) (finding that sleeping on a mattress on the floor in a cold cell for six days was not a constitutional violation); *Valdes v. Evans*, No. 5:19CV-P4-TBR, 2019 WL 334171, at *5 (W.D. Ky. Jan. 25, 2019) ("A . . .

one-week period without a mattress where an inmate does not allege any specific harm from going without it does not give rise to a constitutional violation.").

Plaintiff also states that she put in a request to begin hormone treatment but did not receive copies of her mental health sick calls. She states that Defendant Wilke had "attitude" with her, said Plaintiff was "pro suing," and turned a letter from Plaintiff "into IA."

Plaintiff does not explain who is responsible for not providing her with copies or having her letter provided to IA. Regardless, Plaintiff offers no reason that the failure to receive copies or having her letter forwarded to IA rises to the level of a constitutional violation, and the Court discerns none.

The Court further finds that Plaintiff fails to state an Eighth Amendment claim against Defendant Wilke. While Plaintiff may not appreciate Defendant Wilke's attitude or labeling Plaintiff "pro suing," those alleged actions are not violative of the constitution. *See, e.g.*, *Murray v. U.S. Bureau of Prisons*, 106 F.3d 401 (6th Cir. 1997) ("[T]he Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."). The Court will dismiss these claims for failure to state a claim.

## *2. Transfer*

Plaintiff requests transfer to another facility. However, the law is clear that a prisoner has no right to be incarcerated in a particular institution or a particular part of an institution. *See Montanye v. Haymes*, 427 U.S. 236 (1976); *Meachum v. Fano*, 427 U.S. 215, 223–25 (1976); *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998); *Dancy v. George*, No. 07-CV-97-GFVT, 2007 WL 2251926, at *2 (E.D. Ky. Aug. 2, 2007) ("[W]ell-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison; transfers to any

particular prison; any particular security classification; or housing assignment[.]"). The Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### 3. Supervisory liability

Plaintiff alleges that she wrote Defendant Plappert about her problems, but Defendant Plappert "failed to fix the problem."

Plaintiff fails to state a claim because she has not alleged that Defendant Plappert directly participated in the events related to Plaintiff's claims. The doctrine of *respondeat superior* does not apply in § 1983 actions to impute liability to supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

### 4. Failure to protect

Plaintiff alleges that Defendants Johnson, Horn, and Bennet told other inmates that she filed "PREAs" on officers and that they tried "to turn inmates against me." She also asserts that

6

Defendant Laure did not take her PREA complaints seriously and that by stating that Plaintiff is a security risk, puts her safety at risk.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, including directing that they must "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832. To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant knew would cause the plaintiff serious harm. *Id*. at 834; *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).

The complaint's allegations are too vague and conclusory to support a failure-to-protect claim against these Defendants. Plaintiff has failed to provide any factual allegations in the complaint, apart from expressing her subjective fears, from which it could be concluded that Defendants' actions placed Plaintiff at a substantial risk of serious harm. *See, e.g.*, *White v. Erdos*, No. 1:19-CV-563, 2019 WL 4267498, at *3 (S.D. Ohio Sept. 10, 2019) ("A hypothetical risk of harm is insufficient to support an Eighth Amendment failure-to-protect claim.") (citing *Lewis v. McClennan*, 7 F. App'x 373, 375 (6th Cir. 2001)), *report and recommendation adopted*, 2020 WL 4192313 (S.D. Ohio July 21, 2020); *Miller v. Stevenson*, No. 1:18-CV-702, 2018 WL 3722164, at *7 (W.D. Mich. Aug. 6, 2018) ("Plaintiff alleges no facts to support his conclusory assertion that he was 'obviously' at risk of harm because of his feminine appearance, let alone that this risk was significant enough such that a failure to protect him would have been a violation of the Eighth Amendment."). For these reasons, the Court will dismiss Plaintiff's failure-to-protect claims.

### III. OTHER FILINGS

Since filing her complaint, Plaintiff has filed five documents (DNs 10-14).

## A. DN 10

The Court considers DN 10 to be a motion to amend the complaint. Because service has not been effected in this case, the Court **GRANTS** the motion (DN 10), *see* Fed. R. Civ. P. 15(a) ("A party may amend its pleading *once* as a matter of course no later than: . . . 21 days after serving it[]") (emphasis added), and screens it under § 1915A and *McGore*, 114 F.3d at 604.

DN 10 is divided into two parts. The first part concerns a mental health treatment meeting on December 17, 2024. Plaintiff records that she expressed concerns about her treatment being kept confidential and her dissatisfaction with "psych staff," none of whom are named Defendants. She also complains that her "transgender woman rights [were] violated since I been at KSP including my safety" and states that she had written Defendant Plappert, non-Defendant Jacob Bruce, and "Frankfort and Ombudsman" and never heard back. The Court finds that these allegations are too vague to state a claim upon which relief may be granted. *See Iqbal*, 556 U.S. at 678 ("'[N]aked assertion[s]' devoid of 'further factual enhancement'" do not state a claim for relief.) (quoting *Twombly*, 550 U.S. at 555, 557).

The second part states that Defendant Bennet said that he would insert a hot curling iron in Plaintiff and has called her a "rat" for filing PREAs and a "snitch." Plaintiff also alleges that on January 6, 2025, while she was in the shower, she asked Defendant Bennet to step away from the window because she was naked, and that Defendant Bennet just stood there and then walked away. She states that she yelled for the Sergeant and Defendant Bennet "turned off the water on me again and start[ed] lingering around the window."

As for Defendant Bennet's alleged threat to sexually assault Plaintiff with a hot curling iron, the Sixth Circuit Court of Appeals has had a "longstanding rule that 'verbal abuse and harassment of prisoners do not alone give rise to a constitutional claim.'" *Roberts v. Carroll*, No.

4:18-CV-04-SKL, 2021 WL 5139505, at *2 n.5 (E.D. Tenn. Nov. 3, 2021) (quoting *Small v. Brock*, 963 F.3d 539, 541 (6th Cir. 2020)); *see Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam); *see also McDonald v. Sullivan Cnty. Jail*, No. 2:08-CV-280, 2010 WL 2010834, at *3 (E.D. Tenn. May 18, 2010) (finding prison guard's threat to kill plaintiff "may be petty, oppressive, and unprofessional, [but] it is not unconstitutional"); *Miles v. Tchrozynski*, No. 2:09-CV-11192, 2009 WL 960510, at *1 (E.D. Mich. Apr. 7, 2009) ("Even verbal threats by a corrections officer to assault an inmate do not violate an inmate's Eighth Amendment rights.").

In *Small*, the Sixth Circuit retreated from that rule in holding that "a prisoner states an Eighth Amendment claim by alleging that, without provocation, a prison official threatened the prisoner's life on multiple occasions and took concrete steps, such as aggressively brandishing a deadly weapon, to make those threats credible." *Roberts*, 2021 WL 5139505, at *2 n.5 (citing *Small*, 963 F.3d at 541).

This case differs significantly from *Small*. In *Small*, the plaintiff alleged that, "without provocation, Officer Brock brandished a knife, threatened to kill him, and motioned in a manner suggesting how Brock would use the knife to kill Small. This occurred on several occasions, causing Small to seek 'treatment and counseling' for 'paranoia, mental distress, [and] psychological stress.'" *Small*, 963 F.3d at 540.

Here, Plaintiff alleges no brandishing or other "concrete steps" by Defendant Bennet to make his threats credible; further, Defendant Bennet's alleged threat was not immediate in nature and not repeated as it was in *Small*. *Id*. at 541 ("The issue then is whether unprovoked and repeated threats to a prisoner's life, combined with a demonstrated means to immediately carry out such

9

threats, constitute conduct so objectively serious as to be 'antithetical to human dignity.'") (quoting *Hope v. Pelzer*, 536 U.S. 730, 745 (2002)). And Plaintiff alleges no psychological consequences such as the "paranoia, mental distress, [and] psychological stress" necessitating "treatment and counseling" as alleged in *Small*. *See, e.g.*, *Rhoads v. Dieble*, No. 1:20-CV-1028, 2020 WL 7382285, at *3-4 (W.D. Mich. Dec. 16, 2020) (finding no Eighth Amendment claim where, "In contrast to the conduct described in *Small*, Plaintiff alleges a single incident, not multiple serious occasions. Moreover, Dieble's alleged threat did not suggest that he intended to immediately end Plaintiff's life. Finally, the conduct in *Small* involved an officer's motions with a knife that simulated his killing of Small, but Plaintiff described no such 'aggressive brandishing[.]'"); *Howell v. Mayhew*, No. 1:21-CV-69, 2021 WL 2820666, at *10 (W.D. Mich. July 7, 2021) (finding prisoner stated Eighth Amendment claim where "the death threats issued by Defendants . . . were detailed and repeated . . . [and] they followed a beating by [three] Defendants . . . and an attempt to hire another prisoner to attack Plaintiff by [two] Defendants."). The Court holds that Defendant Bennet's one-time alleged threat, though shocking and grotesque, does not rise to the level of an Eighth Amendment violation.

The Court further finds Plaintiff's allegation that Defendant Bennet stood and lingered at the window while Plaintiff was in the shower simply too vague to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

For these reasons, the allegations in the amended complaint must be denied.

### B. DNs 11, 13, and 14

As for Plaintiff's other documents, the Court has examined them to determine if they should be construed as motions to amend the complaint. Although such a motion would not be automatically granted as DN 10 was, "a district court may allow a plaintiff to amend his complaint

before entering a sua sponte dismissal[; however], it is not required to do so[.]" *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).  The Court should deny amendment "if the amendment would be futile." *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 347 (6th Cir. 2014).

In DN 13, Plaintiff asks for a transfer because she is scared for her life and safety because Defendant Laure has told staff that he is going to keep Plaintiff at KSP.  It would be futile to allow amendment here because Plaintiff is repeating claims that the Court has already found fail to state a claim upon which relief may be granted.  *See Wilson*, 148 F.3d at 601 (holding that a prisoner has no right to be incarcerated in a particular institution); *Miller*, 2018 WL 3722164, at *7 (conclusory allegations of risk of harm insufficient to state an Eighth Amendment claim).

DN 11 asserts that non-Defendant Massey has told inmates that Plaintiff has filed "PREAs" on officers; that non-Defendant Ms. Horn has told other staff that she sued her husband and "[she] need[s] a hit put on me;" and that non-Defendant Amy Fischer has told staff and inmates that Plaintiff is manipulative and that she is going to throw away her mail.  Plaintiff also alleges that she and other inmates in Cellhouse 7 where she was recently moved almost always must get up at 3:00 a.m. to get their pills, which she claims is a violation of the Eighth Amendment.  She states that when she told Fischer that inmates are not getting eight hours of sleep Fischer responded that she was not going to reschedule how Cellhouse 7 operates.

In DN 14, Plaintiff states that she does not feel safe because she has filed suit against Ms. Horn's husband and that on February 10, 2025, Ms. Horn "did pill call;" further, Defendant Plappert "knows that a conflict of interest having Ms. Horn around me.  It's negligence and Plappert knows what is going on."

For the reasons stated above, it would be futile to allow Plaintiff to amend as to the allegations of filing "PREAs" and the one-time verbal threat by non-Defendant Horn.

11

Additionally, Plaintiff fails to state a claim regarding the timing of pill call in Cellhouse 7.  *See, e.g.*, *Montague v. Schofield*, No. 2:14-CV-292, 2015 WL 1879590, at *14–15 (E.D. Tenn. Apr. 22, 2015) ("[T]here are no allegations which rise to the level of a sufficiently serious deprivation and none to show that any defendant was deliberately indifferent to plaintiff's need for adequate sleep. Therefore, plaintiff fails to establish that the 5:30 AM head count impinged on his constitutional rights."); *Pouncy v. Burgess*, No. 1:23-CV-279, 2023 WL 4101188, at *8 (W.D. Mich. June 21, 2023) ("Plaintiff's complaint is devoid of facts that would plausibly suggest that Defendants . . ., in continuing to allow officers to conduct rounds using metal round readers [which made noise and repeatedly interrupted inmates' sleep] . . ., were engaged in an 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment.") (citing *Ivey*, 832 F.2d at 954).  Therefore, the Court will not allow amendment to add these claims.

### C. DN 12

Finally, in DN 12, Plaintiff states that KSP inmates "have not been able to petition and write our lawyers . . . in almost 3 weeks."  It appears that Plaintiff wishes to raise this claim on behalf of other inmates, and not herself.

Plaintiff may not represent other inmates as set forth in 28 U.S.C. § 1654, which provides that "[i]n all courts of the United States the parties may plead and conduct their own cases *personally or by counsel* as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." (Emphasis added.)  *See Zanecki v. Health Alliance Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 2014) (because "*pro se*" means to appear on one's own behalf, a person may not appear *pro se* on another person's behalf in the other's cause of action).

Even if Plaintiff intended to raise her own claim, she does not say that she is represented by a lawyer, and, if she is, that she cannot communicate with her lawyer by other means, such as

12

visitation or phone. A prisoner's access to one's lawyers must be evaluated as a whole, not just by one means of communicating. *See Uraz v. Ingham Cnty. Jail*, No. 1:19-CV-550, 2019 WL 4292394, at *9 (W.D. Mich. Sept. 11, 2019) (collecting cases). As such, Plaintiff fails to state a claim in this document. The Court will, therefore, not allow amendment to add these claims.

### IV. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, dismiss this action.

Date: March 6, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
4414.009

13